**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT LAUDERDALE DIVISION**

**Case No. 0:25-cv-61780-AHS**

**ADRIANA BARBIERI *et al.*,**

Plaintiffs,

v.

**METROPOLIS TENNESSEE LLC D/B/A**
**METROPOLIS TECHNOLOGIES INC,**

Defendant.
_________________________________________/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Adriana Barbieri et al. ("Plaintiffs"), by and through the undersigned counsel, file this Response in Opposition to Defendant's Motion to Dismiss and Incorporated Memorandum of Law [D.E. 32] (the "Motion"), and in support state as follows:

## INTRODUCTION

The subject matter arises out of claims by Plaintiffs against Defendant for violations of the Drivers Privacy Protection Act, 18 U.S.C § 2721 ("DPPA") and Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a) ("FDCPA"). As stated in Plaintiffs' Amended Complaint [D.E. 28] (hereinafter "Amended Complaint"), various property owners are the owners of real properties which holds themselves out to the general public as parking lots. Amended Complaint at ¶¶ 11, 54, 92, 130, 168, 206. The property owners hired and/or contracted with Defendant to collect, or attempt to collect, funds from individuals that allegedly owe money to the property owners for the use of the particular parking lots. *Id*. at ¶¶ 12, 55, 93, 131, 169, 207. On behalf of the particular property owner and in connection with the parking lot, Defendant collects funds from individuals and transmits all or a portion of said funds to the property owner. *Id*. at ¶¶ 13, 56, 94, 132, 170, 208. The individual that parks a vehicle in the parking lot is debtor of any debt allegedly owed to

property owner, if any, in connection with the parking lot. *Id*. at ¶¶ 15, 58, 96, 134, 172, 210. On behalf of property owner, Defendant collects the license plate information of vehicles being driven by individuals that allegedly owe money to property owner. Id. at ¶¶ 18, 61, 99, 137, 175, 213.

Defendant then submits request to the FDOT using the license plate information of vehicles driven by individuals that allegedly owe money to property owner. Id. at ¶¶ 19, 62, 100, 138, 176, 214. By and through requests to FDOT, Defendant obtains access to the personal information and/or highly restricted personal information of the owner of the vehicle driven by the individual that allegedly owes money to property owner. Id. at ¶¶ 20, 63, 101, 139, 177, 215. Defendant's purpose in obtaining Plaintiffs' personal information and/or highly restricted personal information from FDOT was to directly solicit Plaintiffs for payment of debt sought in the collection letters. Id. at ¶¶ 33, 71, 109, 147, 185, 223.

Plaintiffs allege that, because Defendant's intended use of Plaintiffs' personal information and/or highly restricted personal information was not permissible under the federal Drivers Privacy Protection Act, 18 U.S.C § 2721 ("DPPA"), Defendant violated Plaintiffs' privacy rights under the DPPA, 18 U.S.C § 2721, by scanning the vehicles' license plates and using the collected information to obtain Plaintiffs' personal information and/or highly restricted personal information from the motor vehicle records maintained by the State of Florida and dunning them by and through the collection letters. Id. at ¶¶ 45, 83, 121, 159, 197, 235.

Plaintiffs further allege that Defendant failed to disclose the information required by the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a) ("FDCPA"), to Plaintiffs within five (5) days of Defendant's initial communications with Plaintiffs in connection with the collect of the debt sought in the collection letters. Id. at ¶¶ 51, 89, 127, 165, 203, 241.

Defendant argues that Plaintiffs' Amended Claim should be dismissed because it does not plead facts to support that Defendant knowingly obtained information from the FDOT or that Defendant used the personal information for an impermissible purpose, and that Defendant is a debt collector under the FDCPA. For the reasons set forth below, Defendant's argument fails as matter of law because Plaintiffs' well-pleaded factual allegations, taken as true, and all reasonable inferences being drawn in the light most favorable to the Plaintiffs, plausibly state a claim under the DPPA and FDCPA.

## APPLICABLE STANDARD

When considering a motion to dismiss, the "well-pleaded factual allegations are taken as true, and all reasonable inferences are drawn in the light most favorable to the plaintiff." Silver Crown Invs., LLC v. Team Real Est. Mgmt., LLC, 349 F. Supp. 3d 1316, 1325 (S.D. Fla. 2018); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The analysis is limited to the four corners of the plaintiff's complaint and the attached exhibits. Fed. Trade Comm'n v. Student Aid Ctr., Inc., 281 F. Supp. 3d 1324, 1331 (S.D. Fla. 2016).

Defendant urges this Court into error by improperly filling its Motion with factual matter outside of the four corners of Plaintiffs' Amended Complaint. *See* Motion at pp. 13-14, 19-25. The Court cannot make factual determinations in evaluating a motion to dismiss. Katz v. Chevaldina, 900 F. Supp. 2d 1314, 1315 (S.D. Fla. 2012). Accordingly, the Court properly cannot consider such extraneous matter. Est. of Malkin v. Wells Fargo Bank, NA, 998 F.3d 1186, 1201 (11th Cir. 2021) (finding that the trial court "erred in considering matters beyond the face of the complaint"), *certified question answered sub nom.* Wells Fargo Bank, N.A. v. Est. of Malkin, 278 A.3d 53 (Del. 2022). Accordingly, the Court properly must disregard this factual matter contained in the Motion and, instead, "must accept the allegations in the complaint [] as true." Id.; Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012). As long as those factual allegations "nudge[ plaintiff's] claim across the line from conceivable to plausible the complaint will survive a motion to dismiss." Silver Crown, 349 F. Supp. 3d at 1325. A motion to dismiss a complaint should be denied where "the factual allegations are 'enough to raise a right to relief above the speculative level' . . . even if it appears that a recovery is very remote and unlikely." Fed. Trade Comm'n, 281 F. Supp. 3d at 1331; Twombly, 550 U.S. at 555, 127 S.Ct. at 1955. The allegations of the Amended Complaint, as more fully summarized above, sufficiently state claims against Defendant for violations of the DPPA and FDCPA.

## PLAINTIFFS HAVE SUFFICIENTLY PLED FACTS IN THE AMENDED COMPLAINT ALLEGING DEFENDANT'S VIOLATION OF THE DPPA

Defendant alleges that Plaintiffs have not pled facts supporting their claim that Defendant violate the DPPA, however this argument fails. As noted below, Defendant knowingly obtained from one or more state department of motor vehicles Plaintiffs' personal information and/or highly restricted personal information. Defendant's purpose of obtaining the personal information and/or highly restricted personal information was not for any of the DPPA's exceptions, but rather solely

for the purpose of billing the registered owner of the vehicle. Accordingly, Plaintiffs have sufficiently pled that Defendant violated the DPPA.

### A. Plaintiffs Have Sufficiently Pled That Defendant Submitted a Request to the Florida Department of Transportation

As an initial matter, Defendant argues that Plaintiffs' Amended Complaint does not plead facts supporting that Defendant submitted a request to the FDOT. Defendant vaguely alleges that it could have obtained Plaintiffs' information from sources that are not and did not originate from a motor vehicle record from the FDOT, then proceeds to argue throughout the Motion why it was allowed to use FDOT-obtained personal information. It is unclear whether Defendant is implying that it obtained the information from a source other than the FDOT, however any such fact-finding inquiry is not required for purposes of the subject Motion to Dismiss. Likewise, the Court cannot consider Defendant's allegation that Plaintiffs Lindor and Nakhleh provided Defendant with information when they made accounts. *See* Katz, 900 F. Supp. 2d at 1315 ("The Court does not make factual determinations in evaluating a motion to dismiss.").

Defendant cites to a case, Pavone v. Meyerkord & Meyerkord, LLC, 118 F. Supp. 3d 1046 (N.D. Ill. 2015), where the plaintiffs had alleged that Defendant had knowingly obtained a copy of a traffic crash report to send an advertisement. Id. at 1048. The plaintiffs alleged that Defendant violated the DPPA when it obtained their information from the report and used it for an unlawful purpose. Id. The plaintiffs argued that the report was not a motor vehicle record, but that it met the definition of a motor vehicle record because it contained their personal information that originated from the DMV. Id. at 1053. The court ultimately dismissed the plaintiff's DPPA claim because they failed to allege facts that establish or support a reasonable inference that Defendant obtained their personal information from a motor vehicle record. Id. at 1056. Defendant also cites to Garey v. James S. Farrin, P.C., 35 F.4th 917, 926 (4th Cir. 2022), which also dealt with accident reports and where the plaintiffs were also making the argument that there was a DPPA violation because the information was derived from a motor vehicle record. Id. at 926. Defendant also cites to Whitaker v. Appriss, Inc., 266 F. Supp. 3d 1103, 1110 (N.D. Ind. 2017), which also dealt with accident reports. Id. at 1104.

The facts of this matter are not comparable to the cases cited by Defendant. Here, Plaintiffs' well-pleaded factual allegations, taken as true, and all reasonable inferences being drawn in the

light most favorable to the Plaintiffs, plausibly state that Defendant obtained their personal information and/or highly restricted personal information from the FDOT.

As alleged by Plaintiffs, various Property Owners are the owner of real properties which hold themselves out to the general public as parking lots. *See* Amended Complaint at ¶¶ 11, 54, 92, 130, 168, 206. On a date better known by the particular Property Owner and Defendant, the Property Owner hired and/or contracted with Defendant to collect, or attempt to collect, funds from individuals that allegedly owe money to the Property Owner for the use of the parking lot. *Id*. at ¶¶ 12, 55, 93, 131, 169, 207. On behalf of Property Owner and in connection with the parking lot, Defendant collects funds from individuals and transmits all or a portion of said funds to Property Owner. *Id*. at ¶¶ 13, 56, 94, 132, 170, 208. The individual that parks a vehicle in the parking lot is debtor of any debt allegedly owed to Property Owner, if any, in connection with the parking lot. *Id*. at ¶¶ 15, 58, 96, 134, 172, 210.

The Amended Complaint further states that, on behalf of Property Owner, Defendant collects the license plate information of vehicles being driven by individuals that allegedly owe money to Property Owner. Id. at ¶¶ 18, 61, 99, 137, 175, 213. Defendant submits request to the Florida Department of Transportation ("FDOT") using the license plate information of vehicles driven by individuals that allegedly owe money to Property Owner. Id. at ¶¶ 19, 62, 100, 138, 176, 214. By and through requests to FDOT, Defendant obtains access to the personal information and/or highly restricted personal information of the owner of the vehicle driven by the individual that allegedly owes money to Property Owner. Id. at ¶¶ 20, 63, 101, 139, 177, 215. Defendant's purpose in obtaining Plaintiffs' personal information and/or highly restricted personal information from FDOT was to directly solicit Plaintiffs for payment of debt sought in the Collection Letter. Id. at ¶¶ 33, 71, 109, 147, 185, 223.

As of the date and time Defendant submitted a request to FDOT for Plaintiffs' personal information and/or highly restricted personal information, Plaintiffs had not provided written consent to Defendant for it to do so. Id. at ¶¶ 34, 72, 110, 148, 186, 224. After the vehicles entered a parking lot for which Defendant collects debts on behalf of the owner thereof, Defendant obtained Plaintiffs' personal information from a state motor vehicle department based on the vehicles' license plates and sent one or more letters to Plaintiffs seeking payment for Plaintiffs' alleged use of the parking lot during the four year period preceding the filing of this Id. at ¶¶ 249, 279, 309, 339, 369, 399. In doing so Defendant knowingly obtained from one or more state

department of motor vehicles Plaintiffs' personal information and/or highly restricted personal information for the purpose of billing the registered owner of the vehicle with complete disregard of the fact that the registered owner was not driving the vehicle in question. Such use is not for a permissible purpose under the DPPA. Id. at ¶¶ 250, 280, 310, 340, 370, 400.

Given that Plaintiffs have sufficiently pled that Defendant obtained their personal information and/or highly restricted personal information from the FDOT, Defendant's Motion must be denied.

**B. Plaintiffs Have Satisfied Their Burden to Plead That the DPPA's Exemptions Do Not Apply to Defendant**

Defendant argues that three exceptions to the DPPA apply to Defendant's alleged conduct. Apart from the fact that Defendant is largely attempting to have the Court conduct a fact-finding inquiry in a Motion to Dismiss, Plaintiffs have sufficiently pled that Defendant knowingly obtained from one or more state department of motor vehicles Plaintiffs' personal information and/or highly restricted personal information. Defendant's purpose of obtaining the personal information and/or highly restricted personal information was not for any of the DPPA's exceptions, but rather a purpose not permitted—billing the registered owner of the vehicle. For that reason, and because the Court cannot consider Defendant's factual arguments, Defendant's argument fails.

**1. Defendant Does Not Operate Private Toll Transportation Facilities**

Defendant argues that it is authorized to access Plaintiffs' DMV information because the DPPA allows Defendant to use the information "in connection with the operation of private toll transportation facilities." 18 U.S.C. § 2721(b)(10). Defendant argues that it is the operator of a parking facility that is a private transportation facility under the plain language of the statute. Despite claiming that it falls within within the "plain language" of the statute, Defendant nonetheless takes the Court on a statutory analysis of the meaning of a private toll transportation facility. However, this is not necessary.

The Supreme Court in Maracich v. Spears, 570 U.S. 48 (2013) analyzed various exceptions of the DPPA where attorneys had obtained information from the South Carolina DMV to solicit clients for a lawsuit they had pending against several South Carolina car dealerships. Id. at 53-54. One exception that was analyzed by the Court was (b)(10) of the DPPA for use "in connection with the operation of private toll transportation facilities." Id. at 69. As to that exception, the Court

found that "[t]he DPPA, in subsection (b)(10), permits disclosure and use of personal information “in connection with” the operation of **private toll roads**. If the phrase were interpreted to extend to all solicitations without consent, then the owner of a private toll road could send targeted mass advertisings or direct marketing letters by using the protected personal information obtained from state motor vehicle records.” Id.

The Supreme Court correctly analyzed subsection (b)(1) of the DPPA to mean private toll roads as it consistent with the phrase “transportation” in the statute. The Supreme Court’s interpretation of the statute is also consistent with the definition of a toll as cited in Defendant's Motion, all of which reference a road, highway, bridge, or the like, of a public nature. *See also* 23 USC § 101(a)(8) (defining federal lands transportation facility as “a public highway, road, bridge, trail, or transit system that is located on, is adjacent to, or provides access to Federal lands . . . .”

Although Defendant attempts to take the Court on a long-winded statutory interpretation to argue that a parking garage would fall within this exception, Defendant’s argument fails and Defendant’s Motion must be denied.

**2. Defendant is Not Authorized by Law to Access DMV Information**

Defendant next argues that it is authorized by Florida law to access DMV information. Defendant cites to the DPPA’s “public safety” exception, which allows “any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.” 18 U.S.C. § 2721(b)(14). This exception is inapplicable because Florida law does not “specifically authorize” the use of motor vehicle records to send violation notices for a private parking operation nor is Defendant’s use related to the “operation of a motor vehicle or public safety.”

In City of Tallahassee v. Federated Publications, Inc., No. 4:11CV395-RH/CAS, 2012 WL 5407280, *1 (N.D. Fla. Aug. 9, 2012), a newspaper made a public records request for certain information contained within “violation notices” issued by the city under its red-light camera system. Id. at *1. The red-light camera program was being conducted under legislation known as the Mark Wandall Traffic Safety Program (the “Wandall Act”). Fla. Stat. § 316.0083. “The Wandall Act was named in honor of Mark Wandall, whose wife was nine months pregnant when he was killed by a driver who ran a red light.” State ex rel. City of Aventura v. Jimenez, 211 So. 3d 158, 160 (Fla. Dist. Ct. App. 2016), *approved sub nom.* Jimenez v. State, 246 So. 3d 219 (Fla. 2018). The committee report accompanying the legislation revealed that seventy-six people were

killed in 2008 in Florida by drivers running red lights. Id. The Wandall Act "authorized local governments to use cameras to enforce traffic lights." Id.

In City of Tallahassee, the city "captur[ed] images of vehicles running red lights," had a "police officer review[] [each] image to determine whether it depicts a red-light violation," and "sen[t] the vehicle owner a violation notice." City of Tallahassee, 2012 WL 5407280 at *1. The city used the images of each vehicle's license-plate number to obtain the owner's name and address from the state's driver's-license records "maintained by the Florida Department of Highway Safety and Motor Vehicles ('DHSMV'), which makes them available to the [c]ity for this purpose." Id. If the owner paid the violation notice, "the notice [wa]s filed away, and nothing else c[a]me[] of it." Id. If the owner does not pay the violation notice, the city issued a traffic citation, which initiated "a court proceeding and . . . becomes a public record."

The city filed suit against the newspaper seeking a declaration from the court as to whether the DPPA prohibited the city from complying with the newspaper's public records request seeking the violation notices. Id. The issue for the court in City of Tallahassee was whether disclosure of the violation notice to the newspaper would violate the DPPA.

On cross motions for summary judgment, the court analyzed this question in two parts. First, the court analyzed whether "[t]he disclosures that are routinely made as part of the red-light program—DHSMV's disclosure of the information to the [c]ity, and the [c]ity's inclusion of the information on a violation notice" came within any of the 14 permissible uses in the DPPA. Id. at *2. The court found that the initial disclosure was for three different permissible uses:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> . . .
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.
>
> . . .

> (14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

*Id.* at *2 (citing 18 U.S.C. § 2721(b)). The court found that the city's use of the driver's personal information "easily come[s] within each of these three authorized uses." Id. "The City's lawful functions include issuing a violation notice to a person accused of, or under investigation for, running a red light, bringing the disclosures within paragraph (1). A violation notice initiates a process that is informal but that is nonetheless an administrative proceeding, bringing the disclosures within paragraph (4). And the red-light program is specifically authorized by Florida law and relates to the operation of motor vehicles, bringing the disclosures within paragraph (14)." Id.

Second, the court determined whether the DPPA countermanded "Florida's "broad public-records laws [which] easily reach[] violation notices of this kind." Id. The court found that the DPPA did not prevent disclosure because "[t]he [c]ity has lawfully chosen to use personal information—the names and addresses of vehicle owners—in violation notices that, under Florida law, are public records." Id. The court reasoned that "in a state in which records of administrative proceedings and violation notices of this kind are public records, the use of personal information in an administrative proceeding or violation notice, and its attendant disclosure to the public as a record of the proceeding or governmental action, is a "use specifically authorized under the law of the State that holds the record." Id. The court further found "the use plainly 'is related to the operation of a motor vehicle'; the whole process started with the running of a red light." Id.

Unlike City of Tallahassee, there is no state law that "specifically authorizes" Defendant's use. Defendant relies on section 715.075, Florida Statutes which states that, "[a]n invoice for parking charges issued for violating the rules of the property owner or operator of a private property used for motor vehicle parking must be placed on the motor vehicle in a prominent location or mailed within 5 business days of the violation." Fla. Stat. 715.075(1)(c).

Contrary to Defendant's argument, however, section 715.075, Florida Statutes, does not "specifically authorize" Defendant's use. The statute merely permits parking lot owners/operators to "establish rules and rates" that "may include parking charges for violating the property owner's or operator's rules." Fla. Stat. § 715.075(1)(a). The statute does not require violation notices to be mailed. Instead, the statute contemplates that violation notices may be "placed on the motor

vehicle" or mailed. If mailed, the statute provides certain time frames for same. This is far from specifically authorizing Defendant to use an image of a license plate to obtain the vehicle registration information from the department of motor vehicles. The statute at issue in City of Tallahassee specifically authorized the city to capture video of people running red lights and to use such evidence to issue violation notices. *See* City of Fort Lauderdale v. Gonzalez, 134 So. 3d 1119, 1122–23 (Fla. 4th DCA 2014) ("[u]nder the statute, 'the photographic or electronic images or the streaming video evidence . . . constitutes a rebuttable presumption against the owner of the vehicle'"); *see also* Jimenez v. State, 246 So. 3d 219, 221–22 (Fla. 2018) (answering the following certified question in the affirmative: "[d]oes a local government have the authority under section 316.0083(1)(a), Florida Statutes (2014), to contract with a private third-party vendor to review and sort information from red light cameras, in accordance with written guidelines provided by the local government, before sending that information to a trained traffic enforcement officer who determines whether probable cause exists and a citation should be issued?"). The statute relied on by Defendant does not even mention videos or photographs.

Moreover, the statute itself specifically contemplates that the owner/operator will obtain personal information directly from the people parking and not from a third party. In this regard, section 715.075(5) provides "[a]n owner or operator of a private property used for motor vehicle parking may not sell, offer to sell, or transfer to another person for sale any personal information obtained **from a party** using the private property for parking services." Fla. Stat. § 715.075(5). If the legislature intended for parking lot owners/operators to obtain address information from third parties (such as the state department of motor vehicles), this language (protecting only information "obtained from a party using" the parking facility) would make no sense. If the legislature intended for private owners/operators to be able to obtain personal information from the state department of motor vehicles, it would have protected the re-selling of such information under subsection (5) of the statute.

The "public safety exception" also is inapplicable because Defendant's use is not related to the "operation of a motor vehicle or public safety." There is a stark difference between the city's use of personal information pursuant to the red-light camera program in City of Tallahassee and Defendant's use of personal information at issue in this action. The red-light program captures evidence of motorists running red lights, which the legislature sought to curb so that less people would die from the inevitable collisions caused by such criminal infractions. *See* State ex rel. City

of Aventura, 211 So. 3d at 160 (discussing legislative intent to stop deaths being caused by people running red lights). Defendant's use of personal information is not related to the "operation" of motor vehicles or "public safety." Defendant's use is to collect alleged parking indebtedness. This is far different from the city's use in City of Tallahassee. *See also* Hartman v. Dep't of Conservation & Nat. Res., 892 A.2d 897, 905 (Pa. Commw. Ct. 2006) ("The mere placement of safety information in one edition of the magazine cannot transform a commercial use into a 'use in connection with matters of motor vehicle or driver safety.' [Such a] construction would be inconsistent with Congress' intent to limit disclosure of this personal information for 'surveys, marketing, or solicitations' . . . . Disclosure is prohibited.").

Moreover, other exceptions within the DPPA illustrate why Defendant's use is not within this exception. The DPPA permits the following uses: "(7) For use in providing notice to the owners of towed or impounded vehicles" and "(10) For use in connection with the operation of private toll transportation facilities." Clearly, when Congress enacted the DPPA, it carefully considered many uses that could be made of the personal information at issue. It provided express exceptions for towing and toll operations. It could have provided an express exception for parking operations, but did not do so. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." Pitch v. United States, 953 F.3d 1226, 1234–35 (11th Cir. 2020).

Because Defendant's purpose is not permissible under the DPPA's "public safety" exception and there is no Florida law authorizing Defendant to access DMV information, Defendant's Motion must be denied.

**3. There is No Applicable Anticipation of Litigation Exemption**

Defendant next argues that the "anticipation of litigation" exception to the DPPA, 18 U.S.C § 2721(b)(4), is applicable to the subject suit. As an initial matter, it should be noted that Defendant is using a Motion to Dismiss as a vehicle for the Court to make a factual determination. Whether Defendant anticipated litigation in this matter is a factual determination that is improper at this stage of the case. *See* Katz, 900 F. Supp. 2d at 1315 ("The Court does not make factual determinations in evaluating a motion to dismiss."). Rather, the Court must determine whether Plaintiffs' well-pleaded factual allegations, taken as true, and all reasonable inferences being drawn in the light most favorable to the Plaintiffs, plausibly state that this exception does not apply. They do.

In making its argument, Defendant alleges that Plaintiffs have accused it of obtaining FDOT records for the purposes of identifying a potential litigant. Nowhere does the Amended Complaint make this allegation. Defendant ignores the well-pled allegations of the Amended Complaint, including that, at the time that Defendant obtained Plaintiffs' personal information from the Florida Department of Transportation, "there was no civil, criminal, administrative, or arbitral proceeding between Plaintiff, and Defendant, and/or Property Owner," Amended Complaint at ¶¶ 39, 77, 115, 153, 191, 229; "Defendant's intended use and purpose in obtaining Plaintiff's personal information and/or highly restricted personal information was not "in connection with any civil, criminal, administrative, or arbitral proceeding," Id. at ¶¶ 40, 78, 116, 154, 192, 230; "Plaintiff had not threatened Defendant or Property Owner with any civil, criminal, administrative, or arbitral proceeding" Id. at ¶¶ 41, 79, 117, 155, 193, 231; "Defendant had not initiated any civil, criminal, administrative or arbitral proceeding against any person alleged to have used the parking lot." Id. at ¶¶ 42, 80, 118, 156, 194, 232; and "As of the date and time that Defendant submitted a request to FDOT for Plaintiff's personal information and/or highly restricted personal information, Defendant's efforts to obtain payment from persons, like Plaintiff, who were alleged to have used the parking lot was limited to sending bills to such persons and then referring the matter to another debt collector if not paid." Id. at ¶¶ 43, 81, 119, 157, 195, 233.

These allegations, which must be taken as true for purposes of the Motion, foreclose this exception in its entirety. Defendant did not obtain Plaintiffs' personal information in anticipation of litigation. Instead, as alleged, Defendant had not been threatened with any litigation, had no intention of initiating litigation and did not, in fact, initiate any litigation. Instead, Defendant merely sent the collection letters. If Defendant's actions in this case fall within the exception for "anticipation of litigation," then such an exception would practically swallow the DPPA's prohibitions.

Should the Court consider Defendant's argument that the exception applies, which Plaintiffs again assert is improper and are not waiving that objection, the case law further reveals the bankruptcy of Defendant's position. "For the litigation exception to apply, we have held that there must be an actual investigation, litigation must appear likely at the time of the investigation, and the protected information acquired during the investigation must be of "use" in the litigation, meaning that there was "a reasonable likelihood that the decision maker would find the information useful in the course of the proceeding." Pichler v. Unite, 446 F. Supp. 2d 353, 367 (E.D. Pa.),

*amended in part*, 457 F. Supp. 2d 524 (E.D. Pa. 2006), *aff'd in part, vacated in part*, 542 F.3d 380 (3d Cir. 2008), and *aff'd*, 542 F.3d 380 (3d Cir. 2008); *see also* Young v. W. Pub. Corp., 724 F. Supp. 2d 1268, 1272 (S.D. Fla. 2010) ("to the extent that legal research is done in anticipation of litigation Plaintiffs' claim fails as a matter of law"). "This construction ensures that individuals' statutorily recognized rights to the privacy of their motor vehicle records are not sacrificed whenever a litigant raises the possibility of a tenuous connection between the protected information and issues tangentially related to a conceivable litigation strategy." Pichler v. UNITE, 339 F.Supp.2d 665, 668 (E.D.Pa.2004). Based on the well-plead allegations of the Amended Complaint, Defendant did not obtain Plaintiffs' personal information in connection with a "actual investigation" nor did litigation "appear likely" at the time. In this regard, Defendant does not actually litigate with anyone. Instead, as alleged here, it sends outrageously inflated "violation notices" and then forwards accounts to third-party collectors for further harassment. Defendant's use is closer to commercial solicitation than it is to any *bona fide* litigation purpose.

In Maracich v. Spears, attorneys obtained information from the South Carolina DMV to solicit clients for a lawsuit they had pending against several South Carolina car dealerships. Maracich, 570 U.S at 53-54. The attorneys used the information to mail letters to residents of South Carlina explaining the lawsuit and requesting the residents to return an enclosed reply card if they wanted to participate in the case. Id. at 53-55. The residents filed a class action against the attorneys alleging the attorneys "had violated the DPPA by obtaining, disclosing, and using personal information from motor vehicle records for bulk solicitation without the express consent of petitioners and the other class members." Id. at 56. The trial court entered summary judgment for the attorneys based on the "anticipation of litigation" exception. Id. The Fourth Circuit affirmed. Id. The Supreme Court reversed and held that "a proper interpretation of a use 'in connection with' litigation under (b)(4) in light of the DPPA's text and structure does not include solicitation." In determining whether a particular communication violates the DPPA, the court in Maracich explained:

> A person is liable under the DPPA if he "knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" by one of the statutory exceptions. In determining whether obtaining, using, or disclosing the personal information is for the prohibited purpose of solicitation, the proper inquiry is whether the defendant had the predominant purpose to solicit. Because, in some cases, a communication sent with DPPA-

> protected information may serve more than one objective, a court must discern whether solicitation is its predominant purpose. That purpose might be evident from the communication itself. In other instances the defendant's whole course of conduct will be relevant in determining whether solicitation was the predominant purpose of the act alleged to be wrongful.

Id. at 71–72.

In a DPPA case "liability does not result from the *absence* of any permitted purpose, . . . but from the *existence* of 'a purpose not permitted.'" Pichler, 446 F. Supp. 2d at 367; *see also* Maracich, 570 U.S. 71-72. "The Act contains no language that would excuse an impermissible use merely because it was executed in conjunction with a permissible use." Id. In this action, Defendant obtained the personal information of Plaintiffs so that it could send them inflated and unreasonable "violation" notices. Amended Complaint at ¶¶ 261, 291, 321, 351, 381, 411.

In support of its Motion, Defendant also argues that it has sued multiple individuals who failed to pay for their parking and requests that the Court take judicial notice of those pleadings. A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings. United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994). Accordingly, a court may take notice of another court's order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation. Id. Here, Defendant is attempting to use the existence of these lawsuits to have the Court make a factual determination that Defendant anticipated litigation in this matter, which, as noted above, is not proper for purposes of the subject Motion to Dismiss. Simply put, the Court may take judicial notice of the existence of these records, but it cannot conclude at this stage that this proves the anticipation of litigation exception under the DPPA as this is a fact-finding inquiry.

Given that Plaintiffs' well-pleaded factual allegations, taken as true, and all reasonable inferences being drawn in the light most favorable to the Plaintiffs, plausibly state that the subject exception does not apply and Defendant's purpose is not permissible under the DPPA's "anticipation of litigation" exception, and the Court cannot make a factual determination at this stage that Defendant anticipated litigation, Defendant's Motion must be denied.

**PLAINTIFFS HAVE SUFFICIENTLY PLED THAT DEFENDANT IS A DEBT COLLECTOR UNDER THE FDCPA**

Defendant next argues that it is not a debt collector. Consistent with the rest of its Motion, Defendant again uses the Motion to Dismiss here for the Court to make a factual determination. Defendant argues that it runs its parking facilities, that it's not collecting fees as part of its fiduciary duty to the garage owner but incidentally to its principal purpose of running a parking facility, that Metropolis does not collect debts owed to another but rather only for itself, and Plaintiffs' debt was not in default when they received the parking notices. The Amended Complaint pleads otherwise. That being said, Defendant's argument clearly is seeking for the Court to make the aforementioned factual determinations, which is improper for purposes of a Motion to Dismiss. *See* Katz, 900 F. Supp. 2d at 1315 ("The Court does not make factual determinations in evaluating a motion to dismiss."). Instead, the Court simply must determine whether Plaintiffs' well-pleaded factual allegations, taken as true, and all reasonable inferences being drawn in the light most favorable to the Plaintiffs, plausibly state that Defendant is a debt collector under the FDCPA. Upon review, the Amended Complaint sufficiently pleads that Defendant is a debt collector under the FDCPA.

The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Defendant is within this definition. As alleged by Plaintiffs, various Property Owners are the owners of real properties which hold themselves out to the general public as parking lots. *See* Amended Complaint at ¶¶ 11, 54, 92, 130, 168, 206. On a date better known by the particular Property Owner and Defendant, the Property Owner hired and/or contracted with Defendant to collect, or attempt to collect, funds from individuals that allegedly owe money to the Property Owner for the use of the parking lot. *Id*. at ¶¶ 12, 55, 93, 131, 169, 207. On behalf of Property Owner and in connection with the parking lot, Defendant collects funds from individuals and transmits all or a portion of said funds to Property Owner. *Id*. at ¶¶ 13, 56, 94, 132, 170, 208. Money owed to the Property Owner, if any, for an individual's use of the parking lot is due no later than immediately prior the individual exiting the parking lot in the vehicle the individual parked in the parking lot. *Id*. at ¶¶ 14, 57, 95, 133, 171, 209. The individual that parks a vehicle in the parking lot is debtor of any debt allegedly owed to Property Owner, if any, in connection with the parking lot. *Id*. at ¶¶ 15, 58, 96, 134, 172, 210.

The Amended Complaint further states that, money owed to Property Owner, if any, is past due and/or otherwise in default, after an individual exits the parking lot in a vehicle that utilizes the parking lot without paying. Id. at ¶¶ 16, 59, 97, 135, 173, 211. Once money allegedly owed to

Property Owner is past due and/or otherwise in default, Property Owner imposes punitive fees and charges on the individual, which can be more than twenty (20) times the amount payable by the individual prior default. Id. at ¶¶ 17, 60, 98, 136, 174, 212. On behalf of Property Owner, Defendant collects the license plate information of vehicles being driven by individuals that allegedly owe money to Property Owner. Id. at ¶¶ 18, 61, 99, 137, 175, 213. Defendant submits request to the Florida Department of Transportation ("FDOT") using the license plate information of vehicles driven by individuals that allegedly owe money to Property Owner. Id. at ¶¶ 19, 62, 100, 138, 176, 214. By and through requests to FDOT, Defendant obtains access to the personal information and/or highly restricted personal information of the owner of the vehicle driven by the individual that allegedly owes money to Property Owner. Id. at ¶¶ 20, 63, 101, 139, 177, 215. Defendant regularly collects or attempts to collect debts owed or asserted to be owed to the Property Owners. Id. at ¶¶ 266, 296, 326, 356, 386, 416. Here, the Collection Letters represent Defendant's attempt to collect a debt from Plaintiff in connection with the parking lots owned by the Property Owners. Id. at ¶¶ 271, 301, 331, 361, 391, 421. As a result, Defendant was required to provide Plaintiffs with written notice of the information contained under § 1692g(a) of the FDCPA either within the Collection Letter or within five days thereof. Id.

Based on these allegations, Defendant clearly meets the statutory definition of "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In this regard, "an entity can be considered a 'debt collector' either through the 'principal purpose' definition *or* the 'regularly collects' definition." Rivas v. Midland Funding LLC, 398 F. Supp. 3d 1294, 1301 (S.D. Fla. 2019), *aff'd*, 842 F. App'x 483 (11th Cir. 2021) (*quoting* Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1315 (11th Cir. 2015) (noting that "one of the two statutory standards" under § 1692a(6) "must be met" before an entity can qualify as a "debt collector."). *See also* Henson v. Santander Consumer USA Inc., 582 U.S. 79, 83, 137 S. Ct. 1718, 1721, 198 L. Ed. 2d 177 (2017) ("All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another'").

As to Defendant's arguments that it runs its parking facilities, that it is not collecting fees as part of its fiduciary duty the property owners, and that Defendant does not collect debts owed to another, the Amended Complaint pleads otherwise. The Amended Complaint sufficiently pleads allegations regarding the actual owners of the real property, that the various property owners hired

and/or contracted with Defendant to collect, or attempt to collect, funds from individuals that allegedly owe money to property owners for the use of the parking lot, that Defendant collects funds on behalf of the property owners and transmits all or a portion of the funds to the property owners, any debt is allegedly owed to the property owners, and that Defendant regularly collects or attempts to collect debts owed or asserted to be owed to the property owners.

As to Defendant's argument that Plaintiffs' debt was not in default when they received the parking notices, the Amended Complaint again pleads otherwise. The Amended Complaint pleads that money owed to the property owners, if any, is past due and/or otherwise in default, after an individual **exits the parking lot** in a vehicle that utilizes the parking lot without paying. Furthermore, once money allegedly owed to the property owners is past due and/or otherwise in default, the property owners imposes punitive fees and charges on the individual, which can be more than twenty (20) times the amount payable by the individual **prior default.** Therefore, the Amended Complaint sufficiently pleads that the debt, if any, was in default when Plaintiffs received the parking notices, as it was in default after the vehicle exited the parking lot. It should be noted, again, that Plaintiffs do not waive their objection to Defendant's attempts at having the Court make factual determinations regarding its status as a debt collector.

At this stage of the case, Plaintiffs' allegations are more than sufficient to state a claim against Defendant under the FDCPA. *See* Light v. Seterus, Inc., 337 F. Supp. 3d 1210, 1213 (S.D. Fla. 2018) (rejecting motion to dismiss FDCPA claim stating "the Complaint specifically alleges that 'Seterus was hired to collect the disputed debt by the Federal National Mortgage Association,' and 'the primary function of Seterus's business is to collect payments due to others.' These allegations are more than 'conclusory'; they are facts that, if taken as true, demonstrate that Defendant 'regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another'").

Because Plaintiffs have sufficiently stated a claim against Defendant under the FDCPA, Defendant's Motion must be denied.

**SHOULD THE COURT GRANT DISMISSAL, IT SHOULD NOT BE WITH PREJUDICE**

Defendant argues that the Court should dismiss Plaintiffs' Amended Complaint with prejudice because any amendment to cure its insufficiencies would be futile. Although it is Plaintiffs' position that they have sufficiently pled the allegations in the Amended Complaint to

survive the subject Motion, should the Court find that dismissal is warranted, it must be without prejudice.

A district court's discretion to dismiss a complaint without leave to amend is severely restricted by Fed.R.Civ.P. 15(a), which directs that leave to amend shall be freely given when justice so requires. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice. Id. (citing Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991)). A district court need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile. Id.

Here, given that Defendant's Motion, outside of the factual arguments it improperly attempts to make, deals with the sufficiency of Plaintiffs' factual allegations, should the Court find that dismissal is warranted, Plaintiffs must be given a chance to amend the Amended Complaint before dismissing with prejudice. There has been no undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies in this matter. The prior Complaint was not amended for substantive reasons, but to consolidate various cases. *See* Court's Order on Unopposed Motion to Consolidate Related Actions [D.E. 25]. Furthermore, an amendment here would not be futile or cause undue prejudice to Defendant. Accordingly, this matter **should not** be dismissed with prejudice.

## DEFENDANT'S REQUEST FOR HEARING

Defendant also requests an in-person oral argument on its Motion to Dismiss. Plaintiffs believe that an in-person oral argument is not necessary. Although Defendant attempts to complicate the subject Motion by inserting factual arguments, the Court cannot make factual determinations at this time. *See* Katz, 900 F. Supp. 2d at 1315 ("The Court does not make factual determinations in evaluating a motion to dismiss."). Plaintiffs believe that the issue at hand, whether Plaintiffs' factual allegations state a claim to relief that is plausible on its face, can be adjudicated by the Court without a hearing.

**CONCLUSION**

Based on the above, Plaintiffs request that the Court deny Defendant's Motion to Dismiss and Incorporated Memorandum of Law, and for such other relief as the Court deems necessary.

DATED: February 26, 2026

Respectfully Submitted,

/s/ Talal Rashid .

**TALAL RASHID, ESQ.**
Florida Bar No. 1010307
E-mail: Talal@pzlg.legal
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail: Tom@pzlg.legal
PATTI ZABALETA LAW GROUP
110 SE 6th Street 17th Floor
Fort Lauderdale, Florida 33301
Phone: 561-542-8550

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 26, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Talal Rashid .

**TALAL RASHID, ESQ.**
Florida Bar No. 1010307