UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-61780-CIV-SINGHAL

ADRIANA BARBIERI *et al*.,

**CONSOLIDATED ACTION**

Plaintiffs,

v.

METROPOLIS TECHNOLOGIES, INC.,

Defendant.

______________________________________/

## ORDER

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss (the "**Motion**"). (DE [32]). The Court has considered the Motion (DE [32]), Plaintiff's Response (DE [35]), Defendants' Reply (DE [36]), argument of counsel (DE [46]), and is otherwise fully advised. For the following reasons, the Motion (DE [32]) is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

This lawsuit arises from bills directed to six vehicle owners for unpaid parking debts incurred at four different parking lots. (DE [28] ¶¶ 11, 54, 92, 130, 168, 206). Those who park in the lots are charged fees that are "owed to [the lot owners]" and "due no later than immediately prior [to] the individual[s] exiting the parking lot[s]." *Id.* ¶¶ 14, 57, 95, 133, 171, 209. Consequently, the parking debts are "past due and/or otherwise in default[ ] after an individual exits the parking lot in a vehicle that utilizes the parking lot without paying." *Id.* ¶ 16, 59, 97, 135, 173, 211.

Defendant helps the lot owners collect unpaid parking debts. *See id.* ¶¶ 12, 55, 93, 131, 169, 207. Specifically, Defendant "collects the license plate information of vehicles being driven by individuals that allegedly owe money to [the lot owners]" and

uses that information to request and obtain from the Florida Department of Transportation the vehicle owners' "personal information and/or highly restricted personal information."[1] *Id.* ¶¶ 18–20, 61–63, 99–101, 137–39, 175–77, 213–15. Defendant then used that information to "send a false, misleading, inflated and/or unreasonable demand[s] for payment to Plaintiff[s]." *Id.* ¶¶ 36, 74, 112, 150, 188, 226. The bills are apparently "false" or "misleading" because—although their vehicles utilized the parking lots—*Plaintiffs* did not park their vehicles in those lots. *See id.* ¶¶ 36, 74, 112, 150, 188, 226. They are purportedly "inflated" or "unreasonable" to the extent they include "Fees" or "Notice Fee[s]" of $25.25 or $45.25[2] in addition to parking fares. *See* (DE [28-1], [28-2], [28-3], [28-4], [28-5], [28-6]).

Plaintiffs assert two counts each, one for violations of the Drivers Privacy Protection Act (the "**DPPA**") and another for violations of the Fair Debt Collection Practices Act (the "**FDCPA**"). *See* (DE [28] at 35–67). The parties dispute whether Plaintiffs state a claim. *See* (DE [32], [35], [36]).

## II. LEGAL STANDARD

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a)

---

[1] Although Plaintiffs plead Defendant might have requested and obtained their "highly restricted personal information," the Court does not credit the allegation. In the DPPA context, "'highly restricted personal information' means an individual's photograph or image, social security number, medical or disability information." 18 U.S.C. § 2725(4). Aside from Plaintiffs' conclusory and noncommittal assertions that Defendant might have obtained that information, the Amended Complaint contains no well-pled allegations to that effect. Moreover, the Plaintiffs' respective bills do not suggest the Defendant requested, obtained, or otherwise used Plaintiffs' social security numbers, photographs, medical, or disability information to collect debts. *See* (DE [28-1], [28-2], [28-3], [28-4], [28-5], [28-6]). Indeed, to assume that kind of sensitive, seemingly irrelevant information was used to collect parking debts would be to disregard the common sense this Court is required to exercise. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). Nevertheless, Plaintiffs will be afforded an opportunity to replead the point if there is a good-faith basis to do so.

[2] Five of the six bills charge $45.25 fees, *see* (DE [28-1], [28-2], [28-4], [28-5], [28-6]), while only one bill charges a $25.25 fee, *see* (DE [28-3]).

does not require "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"In general, courts only consider the four corners of a complaint and the complaint's attached exhibits when analyzing a Rule 12(b)(6) motion to dismiss." *Turner v. Williams*, F.4th 564, 583 n.27 (11th Cir. 2023) (citation omitted). Courts must review the complaint in the light most favorable to the plaintiff, and must generally accept the plaintiff's well-pleaded facts as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). However, pleadings that "are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Defendant asks the Court to dismiss all Plaintiffs' claims with prejudice. *See generally* (DE [32]). Plaintiffs' DPPA and FDCPA claims are addressed in turn.

### A. Plaintiffs' DPPA Claims are Dismissed

Although Defendant advances four bases to dismiss Plaintiffs' DPPA claims, *see id.* at 12–20, the Court considers only one—section 2721(b)(10)'s exception for "use in

connection with the operation of private toll transportation facilities." Because that exception is dispositive, the Court does not address the parties' remaining arguments.

To state a DPPA claim, a plaintiff must plead "that a defendant (1) knowingly obtained, disclosed or used personal information, (2) from a motor vehicle record, (3) for a purpose not permitted." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008). That it is a DPPA plaintiff's burden to affirmatively plead a non-permitted purpose is beyond doubt. *See id.* at 1112 ("[Plaintiff] argues that the permissible uses listed in § 2721(b) function as statutory exceptions and, therefore, the defendants should carry the burden of proof to secure entitlement of such exceptions. We disagree."). The parties dispute whether Plaintiffs have carried that burden.

Specifically, Defendant asserts that Plaintiff does not—and cannot—plead around the permitted purpose codified at 18 U.S.C. § 2721(b)(10). Section 2721(b)(10) provides that "[p]ersonal information . . . may be disclosed . . . [f]or use in connection with the operation of private toll transportation facilities." § 2721(b)(10). Defendant submits that the parking lots are "private toll transportation facilities" that are entitled to use Plaintiffs' personal information. *See* (DE [32] at 15–18). Citing *Maracich v. Spears*, 570 U.S. 48 (2013), Plaintiffs counter that section 2721(b)(10) applies only to "private toll roads" and that its application to parking lots would be inconsistent with the statute's use of the words "toll" and "transportation." *See* (DE [35] at 6–7). In this Court's view, Defendant has the better reading.

**1. Defendant Charges Parking "Tolls"**

Defendant charges tolls on behalf of parking lot owners. Defendant's dictionary entries from 1990, 1992, and 1994 are particularly authoritative in interpreting the 1994-

enacted DPPA. *See* Pub. L. 103-322, Title XXX, § 300002(a) (Sept. 13, 1994).[3] Included among those dictionaries' "toll" definitions are the following: **(1)** "[a] fixed charge . . . for a privilege, especially for passage across a bridge or along a road," *see* (DE [32-1] (AMERICAN HERITAGE DICTIONARY (3rd ed. 1992)), **(2)** "a . . . charge for a privilege, esp[ecially] for permission to pass over a bridge, along a highway, *etc[etera]*.," **(3)** "a charge for service or extra service, as for transportation," *see* (DE [32-2] (WEBSTER'S NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3rd ed. 1994) (emphasis added)), and **(4)** "[a] sum of money for the use of something, generally applied to the consideration which is paid for the use of a road, highway, bridge, *or the like*," *see* (DE [32-3] (BLACK'S LAW DICTIONARY (6th ed. 1990) (emphasis added)). That the instant parking fares fit comfortably within these definitions requires no explanation.

Moreover, as Defendant notes, courts often refer to parking fares as "tolls." *See, e.g.*, *Stanley v. Stanley*, 756 So. 2d 210, 213 (Fla. 4th DCA 2000) ("The order taxing costs included amounts itemized for . . . parking tolls . . . ."); *State ex rel. Dresskell v. City of Miami*, 13 So. 2d 707, 708 (Fla. 1943) ("A parking meter collector, we presume, is one who goes about over the city collecting tolls that are deposited in municipally-owned parking meters by motor vehicle operators for the privilege of parking on the public streets."); *Medrano v. City of San Antonio, Tex.*, 179 Fed. Appx. 897, 903 (5th Cir. 2006) (discussing "Parking Toll Attendant" job classification). Plaintiffs offer no counter-authority on this point and fail to otherwise articulate why the instant parking fees are not tolls. Under the weight of these authorities, the Court is convinced that when Defendant charges motorists fees for parking, Defendant charges "toll[s]" within the meaning of section 2721(b)(10).

---

[3] Subsection (b)(10)'s language remains unchanged since its 1994 enactment.

**2. The Parking Lots are "Transportation Facilities"**

Section 2721(b)(10) does not define "transportation facilities." *See generally* § 2721. As Defendant's authorities demonstrate, however, Congress has at least twice defined the phrase "transportation facility" to include parking lots. *See* 23 U.S.C. § 217(j) ("The term 'bicycle transportation facility' means . . . parking facility for bicycles."); 49 U.S.C. § 5323(r) ("[F]ederally funded public transportation facilities . . . include . . . park and ride lots . . . ."). But Congress has also distinguished "transportation facilities" from "adjacent vehicular parking areas," *see* 23 U.S.C. § 203(a)(1)(A)(i), such that the phrase lacks a crystalized meaning across federal statutes. Accordingly, whether subsection (b)(10) applies to parking lots is a context-driven inquiry. *See In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018) ("[T]o ascertain the plain meaning of a statute, '[courts] do not look at one word or term in isolation, but instead . . . to the entire statutory context.'" (quoting *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999))).

The DPPA was enacted to "respond[ ] to at least two concerns over the personal information contained in state motor vehicle records." *Maracich*, 570 U.S. at 57. "The first was a growing threat from stalkers and criminals who could acquire personal information from state [departments of motor vehicles]." *Id.* The second concern related to the States' common practice of selling personal information to businesses engaged in direct marketing and solicitation." *Id.* "To address these concerns, the DPPA 'establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent.'" *Id.* (quoting *Reno v. Condon*, 528 U.S. 141, 143 (2000)). In an apparent attempt to facilitate effective billing of motorists, however, Congress expressly permitted "private toll transportation facilities" to obtain drivers'

personal information. *See* § 2721(b)(10). This exception is but one of many in a menu of permitted exceptions. *See, e.g.*, § 2721(b)(1)–(14).

In context, parking lots are "transportation facilities." Indeed, this Court discerns no appreciable difference between releasing motorist information to toll roads versus parking lots for the collection of transportation-related tolls that accrue when a vehicle passes a particular threshold or parks in a specific space. And certainly, release of drivers' personal information to parking lots for toll collection advances neither the criminal misuse nor problematic solicitations that precipitated the DPPA's enactment. *See Maracich*, 570 U.S. at 57. Moreover, because vehicular transportation relies as much on parking spaces as it does roads, the Court is unconvinced that "transportation facilities" refers only to roads.

*Maracich* is not to the contrary. There, "[t]he question presented [was] whether an attorney's solicitation of clients for a lawsuit [fell] within the scope of (b)(4)."[4] *Maracich*, 570 U.S. at 52. In answering that specific question, the Supreme Court briefly referenced section 2721(b)(10) and its application to "private roll roads." *Id.* at 69. But that brief discussion served only to demonstrate the narrowness of the phrase "in connection with" as it applied to subsection (b)(12)'s solicitation exception, not to define "private toll transportation facilities" or otherwise expound upon subsection (b)(10). *See id.* Consequently, *Maracich* is inapposite. *See Waters v. Churchill*, 511 U.S. 661, 678 (1994) ("[C]ases cannot be read as foreclosing . . . argument[s] that they never dealt with." (citing *United States v. L.A. Trucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952))). Accordingly, construing section 2721(b)(10) "transportation facilities" as including parking lots

[4] Section 2721(b)(4) permits the use of personal information "in anticipation of litigation," among other things.

comports not only the definitions contained in the federal statutes referenced above, but also the DPPA's purpose and context.

Because private pay-to-park lots are "private toll transportation facilities" within the meaning of section 2721(b)(10), Plaintiffs' DPPA claims are dismissed. Nevertheless, Plaintiffs are afforded leave to amend those claims. While the Court's determination that subsection (b)(10) applies would render futile any amendment alleging improper obtainment, disclosure, or use of "personal information" under the DPPA, it does not foreclose those claims to the extent they concern "highly restricted personal information." *See* § 2721(a)(2) (excluding subsection (b)(10) as an exception to obtaining "highly restricted personal information"). Accordingly, to the extent Plaintiffs can adequately plead those claims in good faith, they are afforded brief leave to do so.

**B. Plaintiffs' FDCPA Claims Survive**

Next, the Court considers whether Plaintiff adequately pled its FDCPA claims. Having reviewed the Amended Complaint and having given Plaintiffs, at this stage of the case, the benefit of every reasonable inference, the Court determines that Plaintiffs plausibly pled their FDCPA claims. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Motion (DE [32]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Amended Complaint's (DE [28]) counts 1, 3, 5, 7, 9, and 11 are **DISMISSED WITHOUT PREJUDICE**;
2. Plaintiffs are **GRANTED** leave to amend consistent with this Order no later than **October 8, 2026**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 28th day of September 2026.

Copies furnished counsel via CM/ECF

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE